718 So.2d 757 (1998)
Joseph Henry POTTS, Petitioner,
v.
STATE of Florida, Respondent.
No. 91393.
Supreme Court of Florida.
September 10, 1998.
*758 Gary S. Israel, West Palm Beach, for Petitioner.
Robert A. Butterworth, Attorney General, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for Respondent.
SHAW, Justice.
We have for review Potts v. State, 698 So.2d 315 (Fla. 4th DCA 1997), based on conflict with Dortch v. State, 651 So.2d 154 (Fla. 1st DCA 1995). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. We approve the result in Potts as explained herein.
Joseph Henry Potts was charged with sale of cocaine based on the sale of ten dollars' worth of cocaine to an undercover officer on September 20,1995. Prior to trial, he filed a motion to dismiss his public defender; he explained at the hearing on the motion that he and his public defender could not see eye to eye on anything. The court warned him against self-representation, conducted an extensive Faretta hearing, and eventually convinced him to accept the public defender as standby counsel. Potts was convicted as charged and sentenced to probation. The district court affirmed. Potts now claims *759 that his waiver of counsel was invalid, that the court failed to warn him of the dangers and disadvantages of self-representation. We disagree.
A defendant's demand for self-representation places the trial court in a quandary, for the court must balance seemingly conflicting fundamental rightsi.e., the court must weigh the right of self-representation against the rights to counsel and to a fair trial. Because the court's ruling turns primarily on an assessment of demeanor and credibility, its decision is entitled to great weight and will be affirmed on review if supported by competent substantial evidence in the record.[1]
The Sixth Amendment grants to each criminal defendant the right of self-representation, regardless of the consequences:
It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts. But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly. To force a lawyer on a defendant can only lead him to believe that the law contrives against him. Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense. Personal liberties are not rooted in the law of averages. The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction. It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage. And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of "that respect for the individual which is the lifeblood of the law."
Faretta v. California, 422 U.S. 806, 834, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (quoting Illinois v. Allen, 397 U.S. 337, 350-51, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (Brennan, J., concurring)).
Because the consequences of self-representation are serious, courts must ensure that the decision to proceed without counsel is made knowingly and intelligently, i.e., "with eyes open":
When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must "knowingly and intelligently" forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open."
Faretta, 422 U.S. at 835, 95 S.Ct. 2525 (citations omitted) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 87 L.Ed. 268 (1942)).
Where the decision to proceed without counsel is made with eyes open, courts must defer:
[W]e hold that once a court determines that a competent defendant of his or her own free will has "knowingly and intelligently" waived the right to counsel, the dictates of Faretta are satisfied, the inquiry is over, and the defendant may proceed unrepresented. The court may not inquire further into whether the defendant "could provide himself with a substantively qualitative defense," for it is within the defendant's rights, if he or she so chooses, to sit mute and mount no defense at all.
....
Where a competent defendant "knowingly and intelligently" waives the right to *760 counsel and proceeds unrepresented "with eyes open," he or she ipso facto receives a "fair trial" for right to counsel purposes.
State v. Bowen, 698 So.2d 248, 251-52 (Fla. 1997) (citations and footnote omitted), cert. denied, ___ U.S. ___, 118 S.Ct. 865, 139 L.Ed.2d 763 (1998). See also Hill v. State, 688 So.2d 901, 905 (Fla.1996) ("The competence that is required of a defendant seeking to waive his right to counsel is the competence to waive the right, not the competence to represent himself."), cert. denied, ___ U.S. ___, 118 S.Ct. 265, 139 L.Ed.2d 191 (1997).
In assessing the validity of a waiver of counsel, a reviewing court should focus not on the specific advice rendered by the trial courtfor there are no "magic words" under Farettabut rather on the defendant's general understanding of his or her rights:
In the instant case, Rogers unequivocally asserted his right to represent himself. The judge advised Rogers that he should have counsel, that it would be to his advantage, and that the charge against him was first-degree murder, a capital felony. He conducted a hearing and inquired into Rogers' education and experience.... He indicated that he recognized the severity of the charge against him and that he knew Faretta guaranteed his right to represent himself.
We agree with the Fitzpatrick court's conclusion that.... "The ultimate test is not the trial court's express advice, but the defendants's understanding." We find that the Faretta standards were met in the instant case because the record establishes that Rogers knew what he was doing and his choice was made with eyes open.
Rogers v. Singletary, 698 So.2d 1178, 1181 (Fla.1996) (citation omitted) (quoting Fitzpatrick v. Wainwright, 800 F.2d 1057, 1064 (11th Cir.1986)). As this Court explained in Hill v. State, 688 So.2d at 905: "It [is] enough for [the defendant] to be alerted generally to the difficulties of navigating the legal system...."
In the present case, as in Rogers and Hill, the court discussed self-representation with the defendant in detail and at length. In fact, the court conducted numerous discussions on the topic with Potts, cautioning him against self-representation each time.[2] The court on one occasion held a full-fledged Faretta hearingcomprising nearly fifteen pages of record transcriptwherein the court inquired in detail into Potts' age, education, and legal experience. Potts was adamant. Competent substantial evidence supports the conclusion that Potts had a general understanding of his rights and that his decision to proceed without counsel was made with eyes open.
We approve the result in Potts on this issue and disapprove Dortch to the extent that it is inconsistent with this opinion. As with other constitutional rights, the right of self-representation is best safeguarded not by an arcane maze of magic words and reversible error traps, but by reason and common sense. See Melbourne v. State, 679 So.2d 759, 765 (Fla.1996).
It is so ordered.
HARDING, C.J., and OVERTON and WELLS, JJ., concur.
PARIENTE, J., concurs with an opinion.
KOGAN, J., concurs in result only.
ANSTEAD, J., recused.
PARIENTE, Justice, concurring.
I concur in an affirmance. I write only to point out that although there are no "magic words" for a trial court to use in navigating the Faretta course, the Conference of Circuit Judges has now developed a model colloquy that is available to assist trial judges when conducting a Faretta inquiry. See Amendment *761 to Fla. Rule Crim. Pro. 3.111(d)(2)-(3), 719 So.2d 873, 873, 876-880 (Fla.1998).
NOTES
[1] Cf. Willacy v. State, 696 So.2d 693, 695-96 (Fla.) ("[O]ur task on appeal is to review the record to determine whether the trial court applied the right rule of law ... and, if so, whether competent substantial evidence supports its finding."), cert. denied, ___ U.S. ___, 118 S.Ct. 419, 139 L.Ed.2d 321 (1997).
[2] The court repeatedly counseled Potts against self-representation (e.g., "You know that's a big mistake."), warned him of the dangers of self-representation (e.g., "[I]t is a very dangerous thing for you to represent yourself."), and gave him the option of proceeding fully represented (e.g., "It will be my advice to let Mr. Pelino try this case, he's an excellent defense attorney.").